# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| In re: Ivan Jeffery,<br>        Debtor | :  **Chapter 7**<br>:  **Case No. 16-15037-REF** |
| _____ : | |
| **ARTESANIAS HACIENDA REAL S.A. de C.V.,**:<br>        **Plaintiff**<br>      **vs.**<br>**IVAN JEFFERY,**<br>        **Defendant** | :  **Adversary No. 17-00028-**<br>:  **JKF**<br>:<br>:<br>: |
| _____ : | |

**MEMORANDUM OF LAW OF PLAINTIFF JUDGMENT CREDITOR
ARTESANIAS HACIENDA REAL S.A. de C.V. IN SUPPORT OF ITS MOTION
FOR SUMMARY JUDGMENT ON ITS FIRST COUNT TO DENY DEFENDANT
JUDGMENT DEBTOR IVAN JEFFERY DISCHARGE UNDER 11 USC
§§727(a)(4)(A).**

BARRY L. GOLDIN, ESQ.    and    JOHN R. K. SOLT, ESQ.
3744 Barrington Drive                  2045 Westgate Dr., Suite 404B
Allentown, PA 18104                 Bethlehem, PA 18017
Tel: 610-336-6680  Fax: 610-336-6678    Tel: 610-865-2465  Fax: 610-691-2018
Email: barrygoldin@earthlink.net       Email: jsolt.soltlaw@rcn.com
   _Attorneys for Plaintiff/Judgment Creditor Artesanias Hacienda Real S.A. de C.V._

# TABLE OF CONTENTS

| | Page |
|---|---|
| I. .STATEMENT OF FACTS | 1 |
| 1. Defendant Debtor Jeffery's Prior Bankruptcy Experience | 1 |
| 2. Artesanias' $923,457.87 Judgment against Jeffery in the Predecessor Action | 1 |
| 3. Jeffery's July 15, 2016 Bankruptcy Petition and Subsequent Schedules and SOFA | 2 |
| 4. Artesanias' Unopposed Proof of Claim | 3 |
| 5. Artesanias' Instant Adversary Action against Debtor Jeffery | 3 |
| 6. This Court Directs Debtor Jeffery to Provide the Requested Discovery | 3 |
| 7. Jeffery's Sister Sharon Albright Is Also Ordered to Produce Subpoenaed Documents | 4 |
| 8. Artesanias' December 2018 Depositions of Debtor Jeffery, His Wife Wilhelmina Jeffery, and His Sister Sharon Albright | 5 |
| 9. Recent January 2019 Appraisal of the Maggie Jones Road Properties | 5 |
| 10. Discovery Confirms the Revocable Trust Is Ivan Jeffery's "Alter Ego" and a "Sham" | 5 |
| 11. Jeffery's Purchase, Ownership and Farming of the Maggie Jones Road Properties | 6 |
| A. *Acquisition of 42584 Maggie Jones Road* | 7 |
| B. *Acquisition of 42710/42810 Maggie Jones Road Farm Property* | 7 |
| C. *Acquisition of 42600 Maggie Jones Road* | 8 |
| D. *Jeffery's Citrus Farm Now Includes "All Three" Maggie Jones Rd. Properties* | 8 |
| 12. Jeffery's Admissions against Interest He Has a "Business" Farming the Maggie Jones Road Properties under the Name "Paisley Pecan Farm" and Now "Paisley Naval Yard" | 8 |

Page

13. Debtor Jeffery's Additional Admissions against Interest as to His Ownership, Farming, Management, and Operation of the Maggie Jones Road Properties    10

14. Debtor Jeffery's Knowing and Intentional Falsehoods in His Bankruptcy Filings    11

II. DISCUSSION    14

1. Denial of Discharge under 11 U.S.C. §727(a)(4)    14

2. Pursuant to §727(a)(4)(A), Debtor Is Denied Discharge If Debtor's Bankruptcy Papers Failed to Disclose Assets of a Trust That Serves as Debtor's "Sham" or "Alter Ego" or Whose Assets Are Available to Pay Debtor's Obligations    17

    A. Violations of Governing Pennsylvania Trust Law    17

    B. Denial of Discharge Where a Trust Is Debtor's "Sham" or "Alter Ego"    18

    C. A Trust's Spendthrift Clause Cannot Be Used to Defeat Claims of Existing or Future Creditors of Settlor Who Contributed Funds/ Property to the Trust    21

3. In Light of Jeffery's Knowing and Intentional Material Falsehoods in and Omissions from His Bankruptcy Papers, He Should Be Denied Discharge    22

    A. Debtor Jeffery Made False Statements under Oath    22

    B. Debtor Jeffery Knew His Sworn Bankruptcy Filings Were False    23

    C. Debtor Jeffery's Falsehoods Were Material to His Bankruptcy Case    24

    D. Debtor Jeffery's Falsehoods in His Bankruptcy Papers Were Made Recklessly or with Intent to Deceive    24

III. CONCLUSION    25

# TABLE OF AUTHORITIES

Page

Cases

*In re Chantel*,
2015 WL 3988985 (BAP 9th Cir. 2015), *aff.* 694 Fed. Appx. 508 (9th Cir. 2017)                18

*In re Clark*,
2018 WL 4940799 (Bank. E.D. Pa. Oct. 18, 2018)                14

*In re Helsel*,
326 B.R. 591 (Bankr. W.D. Pa. 2005)                16

*In re Katz*,
203 B.R. 227 (Bankr. E.D. Pa. 1996)                16

*In re Lybrook*,
544 B.R. 537 (W.D. Pa. 2015)                16

*In re McCullough*,
259 B.R. 509 (D.RI 2001)                19

*In re Mogridge's Estate*,
342 Pa. 308, 20 A.2d 307 (1941)                21

*In re Tykla*,
353 B.R. 437 (Bankr. W.D. Pa. 2006)                21

*In re Vassen*,
2013 WL 492377 (Bankr. D.N.D. 2013)                16

*In re Von Kiel*,
461 B.R. 323 (Bankr. E.D. Pa. 2012), *aff.* 486 B.R. 327 (E.D. Pa. 2013),
*aff.* 550 Fed. Appx. 105 (3d Cir. 2013)                16

*In re Wiley*,
2010 WL 5185448 (Bank. N. Mex. 2010)                20

*In re Williams*,
2012 WL 3564027 (M.D. Pa. 2012)                16

*Morton v. Morton*,
394 Pa. 402, 147 A. 2d 150 (1959)                21

*Prestige Bank v. Investment Properties Group, Inc.*,
2003 Pa. Super. 204, 825 A.2d 698 (2003)                21

(iii)

|  | Page |
|---|---|
| *U.S. v. Hart*, 2006 WL 3377626 (D. Az. 2006) | 19 |

Statutes and Rules
20 Pa.C.S.A:

| | |
|---|---|
| §7706 | 22 |
| §7734 | 22 |
| §7745 | 22 |
| §7779 | 17 |
| §7780 | 17 |

11 U.S.C.:

| | |
|---|---|
| §502 | 3 |
| §541(a)(1) | 18 |
| §727(a)(2) | 16 |
| §727(a)(4) | 1, 14-25 |

Treatises

| | |
|---|---|
| Bogert on Trusts, §223 (June 2018 Update) | 21 |
| 34 Standard Pennsylvania Practice 2d, §160:91 (November 2018 Update) | 21 |

Plaintiff Artesanias Hacienda Real S.A. de C.V. ("Artesanias") submits this Memorandum of Law pursuant to Fed. R. Bankr. P. 7056 and Fed. R. Civ. P. 56 in support of its Motion for Summary Judgment on the First Count in its adversary Complaint to Deny Defendant Debtor Ivan Jeffery ("Jeffery") Discharge for Jeffery's having "knowingly and fraudulently, in or in connection with this case, made false oath or account in violation of 11 U.S.C. §727(a)(4)" [Complaint, Dkt. 1 ¶¶51-71].[1]

Concurrently herewith, Artesanias has filed its Statement of Undisputed Material Facts ("SUMF"), and Affidavit of Barry L. Goldin ("Goldin Aff.") and exhibits thereto. In turn the SUMF cites the Goldin Affidavit and exhibits thereto including (among other things) Jeffery admissions against interest in testimony and discovery responses.

## I. STATEMENT OF FACTS.

1. Defendant Debtor Jeffery's Prior Bankruptcy Experience.

Defendant Debtor Ivan Jeffery ("Jeffery") is not a newcomer to bankruptcy. In or about 2003, his company (Crescent Brass, of which he was President, director, and sole shareholder) filed a bankruptcy petition, pursuant to which it sought and obtained relief from more than $202,000 of its obligations [SUMF #75].

2. Artesanias' $923,457.87 Judgment against Jeffery in the Predecessor Action.

On April 29, 2016, plaintiff Artesanias obtained entry of, and continues to hold, a Judgment of the U.S. District Court for the Eastern District of Pennsylvania in Artesanias' favor against defendant debtor Jeffery in the amount of $923,457.87 in *Artesanias Hacienda Real S.A. de C.V. v. Wilton Armetale, Inc. and Ivan Jeffery*, 5:15-cv-06350-EGS (the "Predecessor Action"), for Jeffery's breach of his obligations under

---

[1] Artesanias' Motion is filed in accord with the Court's Pretrial Schedule, that "any and all motions for summary judgment … be filed on or before January 30, 2019 [Dkt.73 ¶C].

his June 1, 2015 Guaranty Agreement to Artesanias. Artesanias then duly recorded that Judgment against Jeffery with (among other things) the Clerk of the Circuit Court of Lake County, Florida. [SUMF #'s 1-4]

3. Jeffery's July 15, 2016 Bankruptcy Petition and Subsequent Schedules and SOFA.

On July 15, 2016, Debtor Jeffery signed under oath and filed his voluntary petition for relief under Chapter 7 of the Bankruptcy Code in his instant bankruptcy case, No. 16-15037-REF [Dkt. 1 (Goldin Aff. Ex. 1)]. Thereupon, Jeffery signed under oath and on August 29, 2016 filed with the Bankruptcy Court, his Schedule A/B [Dkt. #33 Goldin Aff. (Ex. 2)], his Schedule I (Dkt. #34, (Ex. 3)], and his Statement of Financial Affairs ("SOFA") [(Dkt. #35 (Ex. 4].

On August 22, 2016, at Debtor Jeffery's initial 341 meeting, he testified under oath that the petition, schedules, statements and related documents filed in his bankruptcy were signed by him and are true and correct [Goldin Aff. Ex. 8 (Tr. at 4:11-23)]:

> "Q. Your attorney is showing you a copy of the bankruptcy. Did you sign the petition schedules, statements, and related documents?
> A. Yes.
> Q. And are those your signatures?
> A. Yes.
> Q. Did you read the petition schedules, statements, and related documents before you signed them?
> A. Yes.
> Q. To the best of your knowledge, is the information true and correct?
> A. Yes."

At that 341 meeting on August 22, 2016, Jeffery further falsely testified he had listed all his assets on his bankruptcy schedules with accurate values [Ex. 8 (Tr. at 15:18-23)]:

> "Q. Have you listed all of your assets on these schedules, everything you own wherever?
> A. Yes.
> Q. Have you listed them with accurate values?
> A. To the best of my ability, yes."

2

4. Artesanias' Unopposed Proof of Claim.

On November 11, 2016, Artesanias filed its Proof of Claim against Jeffery in the

amount of its Predecessor Action judgment of $923,457.87.  Artesanias' Proof of Claim

was never opposed, and is deemed approved, 11 US.C. §502.  [Goldin Aff. ¶¶4-7, Ex. 5]

Artesanias' Judgment and its Proof of Claim remain unsatisfied [Goldin Aff. ¶7].

5. Artesanias' Instant Adversary Action against Debtor Jeffery.

In light of Jeffery's testimony at his 341 meetings (on August 22 and December 5,

2016) and related evidence, Artesanias on January 19, 2017 filed its Complaint to Deny

Debtor Jeffery Discharge -- asserting (among other things) Jeffery knowingly and

intentionally made false disclosures in his bankruptcy filings as to (among other things)

his farm business on, and ownership interests in, nearly 120 acres of valuable real estate,

located at 42584, 42600 and 42710/42810 Maggie Jones Road, Paisley (Lake County),

Florida (the "Properties"), including several houses, barns, 5,500 citrus trees, and related

wells, irrigation system, and other equipment thereon [Goldin Aff. ¶¶9-12, Ex. 6].

Artesanias' Complaint asserts that, although those Properties are held of record by

a revocable trust of which Jeffery's wife is trustee, that trust is a "sham" and Jeffery

"alter ego", and being used contrary to public policy to deny enforcement of Artesanias'

judgment and rights against debtor Jeffery, and that Jeffery's interest therein was required

to be (but was not) disclosed in his bankruptcy filings [Goldin Aff. Ex. 6 ¶43].

6. This Court Directs Debtor Jeffery to Provide the Requested Discovery.

After Artesanias was permitted to begin discovery, Artesanias propounded, but

Jeffery refused to comply with, discovery requests as to (among other things) acquisition,

management and operation of, and insurance on, the Maggie Jones Road farm and real

estate; bills, invoices, claims, and payments related to the farm and related real estate; operation and management of the purported revocable trust; and related matters.

In response to Artesanias' motion to compel Jeffery's compliance with discovery, this Court held an August 15, 2018 hearing at which this Court directed Jeffery to provide documents and other discovery relating to the revocable trust and the Maggie Jones Road properties. In the words of the Court [Goldin Aff. Ex. 14, Tr. 3:22-:6:25]:

> "THE COURT: ... document request number one, which requests documents related to the formulation of a revocable trust. Okay. I don't understand the objection to that because they are clearly within the scope of discovery ... **let me be very clear, under Pennsylvania law on revocable trust the property of the trust is subject to the claims of the settlor's creditors**. The answer is this is clearly relevant, it is clearly within the scope of discovery, ...
>
> ... request number two, documents evidencing and describing, summarizing, or otherwise relating to or concerning the operation or management of the revocable trust. Again, clearly within the scope of discovery here. **How, the Debtor and his wife have operated and managed the trust, and what they do with the property therein is relevant to the allegations in Plaintiff's complaint. ...**
> ... **the question with regard to hanky-panky with a revocable trust goes directly to questions that could arise with regard to dischargeability,...**
> ... it's not just one instance here, there are numerous instances, **and it's very clear that at best they played fast and loose with the concept of the ownership of this property**.
> ... , the Trust is not clearly fine." [emphasis added]

### 7. Jeffery's Sister Sharon Albright Is Also Ordered to Produce Subpoenaed Documents.

Certain of the farm property at issue (42710/42810 Maggie Jones Road) was acquired by Jeffery as his share of an inheritance from his father's estate, of which his sister Sharon Albright and bother Alan Jeffery were co-trustees. Artesanias served a document subpoena on sister Albright for documents Jeffery failed to produce as to allocation and transfer to Jeffery of that farm property; after she (like Jeffery) failed to produce any documents, Artesanias obtained an August 9, 2018 Order from the federal court in Michigan (where she resides) requiring her to produce all subpoenaed

documents; and only then did she produce responsive documents. Those belatedly-produced documents further confirm the farm property was Jeffery's share of his inheritance (which, after that property was allocated to and paid for by Jeffery, he then directed be transferred into the name of the Revocable Trust). [Goldin Aff. Ex.s 20-22]

8. Artesanias' December 2018 Depositions of Debtor Jeffery, His Wife Wilhelmina Jeffery, and His Sister Sharon Albright.

After Artesanias finally received certain of the court-ordered discovery, Artesanias during December 2018 deposed Ivan Jeffery [Goldin Aff. Ex. 18], his wife Wilhemina [Ex. 19], and his sister Sharon Albright [Ex.22].

9. Recent January 2019 Appraisal of the Maggie Jones Road Properties.

Artesanias has now obtained a January 2019 appraisal of the Properties, which values them together at $1,390,000, and individually as follows [Goldin Aff. Ex. 12]:

| | |
|---|---|
| 42584 Maggie Jones Road (house and barn) | $490,000 |
| 42600 Maggie Jones Road (rental property) | $120,000 |
| 42710/42810 Maggie Jones Road (pecan/naval orange farm) | $780,000 |
| Total | $1,390,000 |

10. Discovery Confirms the Revocable Trust Is Ivan Jeffery's "Alter Ego" and a "Sham".

The Revocable Trust Agreement was signed and dated February 1, 2008 while Jeffery and his wife were residents of Birdsboro, Pennsylvania. Its terms state the trust situs is in, and the trust governed by, the substantive laws of Pennsylvania.[2]

Under the Revocable Trust Agreement, Ivan Jeffery is a principal beneficiary of the trust, as its income and/or principal may be used for his "health, maintenance and support" [Goldin Aff. Ex. 57, §§2 & 6A]. If his wife (his elder by more than 10 years)

_____

[2] The Revocable Trust Agreement states [Goldin Aff. Ex. 57, §16]:
"The situs of each trust created in this Agreement shall be … Pennsylvania. The substantive laws of Pennsylvania shall governed the construction, performance and effect of this Agreement with respect to that trust."

becomes ineligible, unable or unwilling to serve as Trustee, he automatically becomes successor trustee [Ex. 57 §9A].

The purported trustee [Jeffery's wife Wilhelmina] recently testified she has no "no experience as a trustee"; "no understanding of the duties and obligations of a trustee"; does not know what a revocable trust is; and did not carry out any duties and obligations of a trustee [SUMF #5; Goldin Aff. Ex. 19 (Tr. at 28:21-33:8)].

As the trustee was so disregarded, Ivan Jeffery swore at his 341 meeting he did not even know the identity of the trustee [SUMF #6; Goldin Aff. Ex. 8 (Tr. 61:16-62:9)]:

> "Q. **And who is the trustee of your wife's trust; do you know?**
> A [Jeffery]. **I don't know whether it's her or I or my attorney. We did it a long time ago, and I've never looked at it since.**"

At Jeffery's 341 meetings and his subsequent deposition, Jeffery testified and so admitted (and later his wife also testified and so admitted) the purported revocable trust:

> (i) never had a bank account of its own, but instead all funds were commingled in Jeffery's bank account [SUMF #'s 5-7];

> (ii) never had any books of account or other records of its own [SUMF #'s 5-7];

> (iii) never had a tax identification number or filed any tax return [SUMF #'s 5-7];

> (iv) never was listed as named insured on any real estate or other property (all insurance being in Ivan Jeffery's name as a named insured, all insurance claims reporting him as a named insured, and all claims being paid by the insurer to him as a named insured) [SUMF #'s 5-7 & 93-97];  and

> (v) he (but not the purported trustee) signed as the "owner" the contract for sale of the real estate's timber; signed as "landowner" an application seeking funds from Florida governmental authorities; and held himself out as the farm's "Proprietor". [SUMF #'s 37-43 & 54-55; Goldin Aff. Ex.s 10, 11 & 39-48].

Accordingly and as more fully described below, the trust instrument's "spendthrift clause"[Ex. 57 §14] is not enforceable against Jeffery creditor Artesanias.

11. <u>Jeffery's Purchase, Ownership and Farming of the Maggie Jones Road Properties.</u>

A. *Acquisition of 42584 Maggie Jones Road*.  Jeffery's testimony and evidence confirm he and his wife signed (as buyer) the contract to purchase the 42584 Maggie Jones Road property (an eight acre tract with house, pool, and barn thereon) for $494,000 on January 17, 2008 (several weeks before February 1, 2008 signing of the Revocable Trust Agreement and formation of the Revocable Trust; only later did they contribute their interest in that property to that Trust; and the down payment and subsequent mortgage payments were paid from funds Jeffery earned or generated [SUMF #9-19].

B. *Acquisition of 42710/42810 Maggie Jones Road Farm Property*.  The 42710/ 42810 Maggie Jones Road property (the "Pecan Farm", now known as "Paisley Naval Yard") was inherited by Jeffery from his father George Jeffery.  The farm consists of approximately 103 acres, including a house and barn [SUMF #'s 25-31].

His father's trust contemplated that, upon his father's death, all his father's property be allocated among Ivan and his three siblings, so each would receive equal value.  After his father's June 6, 2008 death, a meeting was so held among Ivan and his siblings to allocate his father's estate.  At that meeting Ivan sought to be allocated the ¶42710/42810 Maggie Jones real estate and equipment thereon.  Because that real estate then had an appraised $515,000 fair market value and the equipment was then valued at $76,250 (being a total of $115,041 more than the properties allocable to his siblings), Jeffery wrote checks totaling $115,041 to his father's estate to equalize the distributions among siblings (so each received from the estate a net $479,000 distribution).  [SUMF #27-30, Goldin Aff. Ex.s 21 (Albright ¶¶ 7-27) & 22 (Tr. 28:17-42:16)].

After that 42710/42810 Maggie Jones Road farm and equipment had been allocated to and paid by Ivan Jeffery, he directed that it be titled not in his own name

7

(although he had so inherited and paid for it), but rather into the name of the Revocable Trust [SUMF #30, Goldin Aff. Ex. 21 ¶¶20-22 & Ex. 22 (at 43:12-46:17)].

Jeffery admits he subsequently cut down the farm's 400 pecan trees; sold the pecan equipment; and during 2015/2016 converted the property to a citrus farm by planting 5,500 orange trees thereon and installing a 450-foot well, pump, and irrigation system for the trees at a cost of more than $225,000 [SUMF #34-36 & 47-51].

C. *Acquisition of 42600 Maggie Jones Road*. During 2011, Jeffery arranged and funded purchase of 42600 Maggie Jones Road (an approximately seven acre property including a house trailer); thereafter has overseen that trailer's rental to and occupancy by a tenant; and also planted three of the acres with his citrus trees. Jeffery arranged and funded acquisition of that property; insured the property in his own name; oversaw deposit of receipts in and expenditures from Jeffery's bank account; but again titled that property in the name of the Revocable Trust. [SUMF #'s 20-24].

D. *Jeffery's Citrus Farm Now Includes "All Three" Maggie Jones Rd. Properties.*

The Jeffery's have admitted that the 5,500 citrus trees were planted on all three of those Maggie Jones Road parcels (three acres of citrus trees on the 42584 parcel, three acres on the 42600 parcel, and the balance on the 42710/42810 parcel) [Goldin Aff. Ex. 19 (Wilhelmina Depo. at 60:14-62:17) and Ex. 12 (January 2019 appraisal)].

12. Ivan Jeffery's Admissions That He Has a "Business" Farming the Maggie Jones Road Properties under the Name "Paisley Pecan Farm" and Now "Paisley Naval Yard".

At Jeffery's 341 meetings, he repeatedly admitted farming the Maggie Jones Road Properties, initially under the name "Paisley Pecan Farm" and now doing business under the name "Paisley Naval Yard" [SUMF #25-91]. For instance, he so testified:

(i) "A [Jeffery]. "... **Do I have a business at Maggie Jones Road, yeah. I'm raising citrus trees. ... I had pecan trees for a few years.**" [emphasis added] [SUMF #34; Goldin Aff. Ex. 9 (Tr.at 79: 6-10)] [emphasis added]

"(ii) Q. Are you familiar with an entity known as Paisley Pecan Farm?
A. Yeah.
Q. How are you familiar with that?
A. **I raise pecans, and it's part of the 42584 property. I had 400 pecan trees. I was never successful in making enough money to cover costs, so I cut them all down and I've now planted citrus trees.**
Q. Okay. When did you cut down the trees?
A. October of -- I would think October of '14.
Q. And you planted citrus trees in replacement of those trees; is that correct?
A. Yeah.
Q. As a substitute?
A. Right.
Q. **About how many trees did you plant?**
A. **Citrus trees?**
Q. Yes.
A. **Currently -- and I've planted some recently – 5,500.**
...
Q. What was the cost to purchase and plant those trees?
A. I think like $10 or $11 a tree.
…
Q. When do you think those trees were planted?
A. **Some of them were planted in 2015 and some were planted in 2016.**
Q. How long does it take for those trees to mature enough to bear fruit?
A. Should start bearing fruit in four to five years and should bear substantial fruit within seven or eight years.
Q. **Who tends the land for you and the trees**?
A. **Most of it I do. I also have** a grove management firm who handles things like spraying and they did the planting.
…
Q. Okay. Is Paisley -- is it still known as Paisley Pecan Farm?
A. No. We gave that so we can advertise it. **All my pecans, I just set up a stand along the road and just sold them. It was never enough to get excited about. It's now known as a Paisley naval yard, because I planted naval oranges.**
...
Q. On you[r] tax return, how did you treat the pecan farm? How did you report income and expenses?
A. **I reported income and expenses.**" [emphasis added] [SUMF #35; Goldin Aff. Ex.8 (Tr. at 92:2-95:2)] [emphasis added]

(iii) "Q. **Do you participate in any government programs concerning the farm**?

A. **I registered with the government that I had orange trees, because they have some disease issues and they're trying to track where they all are. It was either the Department of Agriculture or University of Florida. I listed that I'm growing orange trees."** [SUMF #36; Ex. 8 (Tr. 112:18-113:1]

13.   Debtor Jeffery's Additional Admissions against Interest as to His Ownership, Farming, Management, and Operation of the Maggie Jones Road Properties.

During discovery Artesanias obtained further documents confirming, and Jeffery admitted his ownership, farming, and operation of those Properties, including:

(a) *Hunting Permissions*. Jeffery during 2012 through 2015 granted hunters permission to hunt on the Maggie Jones Road Properties, for which he received payment of at least $100 in cash per hunting permission [SUMF #'s 44-45];

(b) *Signing as "Owner"*. Jeffery during 2015 signed "as Owner" a contract for sale of timber on the Maggie Jones Road Properties, from which Jeffery received payment of $20,566 [SUMF #'s 41-43];

(c) *Signing as "Landowner" and "Producer"*. Jeffery signed as "Landowner", a February 29, 2016 Notice of Intent to the Florida Department of Agriculture for the Maggie Jones Road Properties to which he attached and signed as "Producer" his Cost-Share BMP Agreement with Marion Soil and Water Conservation Board; he thereby obtained and deposited a check of funds from the Florida government for purchase of equipment to monitor his citrus farm water usage; and he reported his ownership and depreciation of that and nearly $900,000 of other farm property and equipment on his tax returns Schedule "F" ("Profit or Loss from Farming") [SUMF #'s 34-40 & 54-55];

(d) *Purchases*. Jeffery purchased tractors and other farm equipment with funds from whichever bank account he then had funds [SUMF #70];

(e) *Citrus Farm*. Jeffery during 2015 and 2016 arranged planting of 5,500 orange trees, drilling a 450-foot deep irrigation well, and installation of pump/irrigation equipment costing more than $225,000 for the citrus farm, the bills being addressed to and paid by Jeffery (not any revocable trust) [SUMF #'s 47-51];

(f) *Purchasing and Paying for the Oil for the Citrus Farm*. Jeffery purchased the oil to prevent frost damage to the citrus trees; again the bills were addressed to him; and he paid those bills by his check or with his credit card [SUMF #52];

(g) *Real Estate Taxes*. Jeffery paid the real estate taxes for the farm and other Maggie Jones Road Properties, and deducted at least part of his real estate tax payments on his Schedule "F" ("Profit or Loss from Farming") [SUMF #32];

(h) *"Proprietor" Reports*. Jeffery completed and submitted for each year 2012 through 2016 an annual report to his tax return preparer (Joseph Periandi, CPA) in which Jeffery was listed as the farm "Proprietor" [Goldin Aff. Ex.s 39, 41, 43, 45 & 47];[3]

(i) *"Proprietor on His* Tax Returns. For each year after 2012, Jeffery filed with his tax returns his Schedule "F" ("Profit or Loss from Farming ") listing himself as "Proprietor" of, and including his farm depreciation and other farm deductions. He reported thereon his farm property cost as of December 31, 2015 and 2016 as $841,215 and $887,284, respectively. [SUMF #'s 54-55; Goldin Aff. Ex.s 40, 42, 44, 46 & 48].[4]

14. Debtor Jeffery's Knowing and Intentional Falsehoods in His Bankruptcy Filings.

As Artesanias' Complaint to Deny Discharge alleged and the evidence now confirms, Jeffery's bankruptcy filings [his Petition, Schedules and SOFA] include at least 13 knowing and intentional Jeffery falsehoods under oath, including (among others):

*(i) Jeffery's False Statement in Item 1 of His Schedule A/B: Property in Which He Did Not Disclose His Interest in the Valuable Maggie Jones Road Properties Which He Inherited, Purchased, and Uses.* In Jeffery's Official Form 106A/B (Item 1), Jeffery was required to disclose whether he owns or has "any legal or equitable interest in any residence, building, land or similar property".

*Contrary to Jeffery's False Answer to Item 1:* Jeffery did not disclose his interest in the 42584, 42600, 42710/42810 Maggie Jones Road properties he had inherited, purchased, resides in, and uses, recently appraised as having a $1,390,000 market value. [SUMF #'s 28-40; Goldin Aff. Ex.s 10-12, 21-56].

(ii). *Jeffery's False Statement in His Official Form 106 A/B: Property That He Has No Interest in Any Farm-Related Property.* In Jeffery's Official Form 106A/B (Item 46) which asks "Do you own or have any legal or equitable interest in any farm-related property?", Ivan Jeffery falsely answered "No".

*Contrary to Ivan Jeffery's False Answer to Item 46:* Jeffery did not disclose his legal and equitable interest in farm-related Property in which his tax returns admit he has a nearly $900,000 cost basis (including 5,500 citrus trees he planted and well, pump, and irrigation equipment he installed costing more than $225,000) [SUMF #'s 10-36, Goldin Aff. Ex.s 33-48].

---

[3] Merriam-Webster Dictionary defines "Proprietor" to include "Owner" or one having "control" [Goldin Aff. Ex. 38A].
[4] Schedule "F" is filed by a "sole proprietor", defined by the IRS as "someone who owns an unincorporated business by himself or herself" [Goldin Aff. Ex.s 38B].

(iii). *Jeffery's False Statement in His Bankruptcy Petition That He Is Not Proprietor of Any Full or Part-Time Business*.  In Jeffery's Bankruptcy Petition [Item 12] which states "A sole proprietorship is a business you operate as an individual, and is not a separate legal entity such as a corporation, partnership, or LLC" and asks "Are you a sole proprietor of any full-or part-time business", Jeffery falsely answered "No".

*Contrary to Jeffery's False Answer to Item 12*:  Jeffery's misstatement is belied by his testimony as to his farm business; his signed admissions he is the "Owner" and "Landowner" of the Properties; his tax return Schedule "F" in which he lists himself as the farm "Proprietor"; and his other admissions against interest [SUMF #'s 10-36, Goldin Aff. Ex.s 10, 11 & 37-48].

(iv). *Jeffery's False Statement in Response to Official Form 106A/B: Property That He Has No Legal or Equitable Interest in Any Business-Related Property*.  In response to Item 37 in Jeffery's Official Form 106A/B which asks "Do you own or have any legal or equitable interest in any business-related property", Jeffery falsely answered "No".

*Contrary to Ivan Jeffery's False Answer*:  See Response to Items (i) through (iii) above.

(v). *Jeffery's False Answer in His "Schedule A/B: Property" Stating the Total Value of His Business-Related Property and His Farm Related property as "$0.00"*.  In Jeffery's "Schedule A/B: Property" [Items 59 and 60], he falsely stated the total value of his business-related property, and of his farm-related property, was "$0".

*Contrary to Ivan Jeffery's False Answer*:  See Response to Items (i) through (iv) above.

(vi). *Jeffery's Failure to Disclose on His SOFA That He Has Been Storing His Tractors, Machinery and Other Equipment on the Maggie Jones Road Properties*.  In Item 22 of Jeffery's SOFA, he was required to state whether he stored property in a storage unit or place other than his home within a year of his bankruptcy filing, but falsely answered by stating "No".

*Contrary to Jeffery's False Answer*:  Jeffery testified his tractors and other farm equipment are stored on a barn or elsewhere on the 42710/42810 Maggie Jones Road property [SUMF #34; see also items (i) through (iii) above].

(vii). *Jeffery's Failure in His Official Form 107 (SOFA) to Make Required Disclosure of His Connections to the Farm Business; His Commission Agreement with a Metal Casting Business; and His Agreement to Be Paid Proceeds from North Mill Foreclosure on and Sale of Wilton's Valuable Mt. Joy Real Estate.*  In response to SOFA Item 27 requiring Jeffery disclose whether he owned or had any connections to any business (such as full or part-time proprietor or a partner in a partnership), he did not disclose his interest in the farm business [see item (iii) above]; his continuing agreement for commissions from a metal casting business [SUMF #'s 44-45; Goldin Aff. Ex. 59]; and his agreement with North Mill under which he was to be paid 20% of net proceeds from North Mill resale of Wilton's real estate [SUMF #'s 47-48; Goldin Aff. Ex.s 61-63].

*Contrary to Ivan Jeffery's False Answer to Item 27*: As to the farm business, see Items (i) through (iii) above. He has admitted having a four-year agreement (still in force) with a Cast-Rite Metal Co. under which he receives commissions of approximately $1,000 per month [SUMF #44-45], and admitted signing the March 7, 2016 Amendment to Participation Agreement with North Mill under which he would receive 20% of net proceeds from North Mill foreclosure on and resale of Wilton real estate [SUMF #47-48].

(viii). *Jeffery's Failure to Disclose in His Response to Form 106G His Executory Contracts with Cast-Rite Metal Co. and with North Mill.* In response to Official Form 106G requiring Jeffery disclose his executory contracts, Jeffery failed to disclose his four-year commission agreement with Cast-Rite Metal and his Participation Agreement and March 7, 2016 First Amendment to Participation Agreement with North Mill.

*Contrary to Jeffery's False Statements*: See Item (vii) above; Goldin Aff. Ex.s 59, 61-63.

(ix). *Jeffery's False Statement in Item 4 of His Bankruptcy Petition That He Has Not Used Any Business Name and in Item 26 of His Official Form 106 That He Has No Domain Names or Other Intellectual Property.* In response to Item 4 of his Bankruptcy Petition requiring Jeffery to disclose whether he has "used any business name" in the last 8 years and states "Include trade names and doing business as names", Jeffery falsely answered "I have not used any business name"; likewise, in response to Item 26 of Official Form 106 asking whether he had any Internet domain names, websites, or other intellectual property, he falsely answered "No".

*Contrary to Jeffery's False Answers*: Jeffery admitted, and authenticated documents confirming, he has been conducting his farm business under the name of, and using as his d/b/a, "Paisley Pecan Farm" and now "Paisley Naval Yard" [SUMF #'s 10, 20 & 30].

(x). *Jeffery's False Statement in Item 31 of His Official Form 106 A/B: Property That He Had No Interest in Any Homeowner's Insurance.* In response to Item 31 of Jeffery's Official Form 106A/B (Property) -- requiring disclosure of his interest in any homeowner's insurance and requiring him to name the insurance company of each policy, its value, and the beneficiary thereof -- Jeffery falsely answered "No".

*Contrary to Ivan Jeffery's False Answer*: Since 2008 Jeffery has been named insured on the homeowner's insurance on the Maggie Jones Road properties. The recent Chubb proposal for those properties shows Jeffery as named insured of homeowner's insurance thereon for more than $1.5 million. [SUMF #'s 37-40, Goldin Aff. Exs 53-56].

(xi). *Jeffery's False Statement in Item 25 of His Form 106A/B That He Has No Equitable Interest in any Trust.* In response to Item 25 of Jeffery's Form 106A/B requiring disclosure of "Trusts, equitable or future interests in property (other than anything listed in line 1), and rights or powers exercisable for your benefit", he falsely answered "No."

*Contrary to Jeffery's False Statement*: Contrary to his false statement, he was settlor of the 42710/42810 Maggie Jones Road Property (which he inherited and purchased from his father's estate, and then had contributed to the Revocable Trust), the 42584 Property (which he arranged to purchase, paid the down payment, and paid the mortgage); and the 42600 Property (which he arranged to purchase and funded the purchase price). He arranged and paid the improvements thereon (including planting 5,500 citrus trees, and installation of well, pump, and irrigation system at a cost of more than $225,000), real estate taxes, and other costs. He lives in and farms the Property but pays no rent to that Revocable Trust. He is named beneficiary of the Revocable Trust whose income and principal may be used for his health, maintenance and support. [SUMF #10-44, 99-103]

(xii). *Jeffery's False SOFA Statement That Within Two Years Before His Bankruptcy Filing He Made No Gifts with Total Value of More Than $600 per Person*. In response to SOFA Item 35 "Within 2 years before you filed for bankruptcy, did you give any gifts with a total value of more than $600 per person?", he falsely answered "No".

*Contrary to Jeffery's False Statement:* At his 341 meeting, he admitted giving $10,000 to his brother Alan Jeffery in June 2016 (less than a month before his July 15, 2016 bankruptcy filing) [SUMF #105].

(xiii). *Jeffery's False Statement in Schedule 106E/F that Artesanias' Judgment against Him Was for Only $900,658.17 and Was "Disputed"*.  Jeffery falsely swore in his bankruptcy Petition (Item 4.1) that the U.S. District Court's Judgment entered in Artesanias' favor against him was for only $900,658.17 and was "disputed".

*Contrary to Jeffery's False Statement*:  That Judgment was entered as summary judgment in Artesanias' favor against Jeffery; was never appealed by Jeffery nor otherwise disputed; and was for $923,457.87 (the sum of $900,658.17 and pre-judgment interest thereon of $22,799.70) [SUMF #107-108, Goldin Aff. ¶¶5 & 7, Ex. 5].

## II. **DISCUSSION**.

1.  Denial of Discharge under 11 U.S.C. §727(a)(4).

Under 11 U.S.C. §727(a)(4)(A), discharge is denied to a debtor who "knowingly and fraudulent, in or in connection with the case (A) made a false oath or account".

On point is the recent decision *In re Clark*, 2018 WL 4940799 (Bank. E.D. Pa. Oct. 18, 2018) denying debtor discharge in light of false statements in debtor's bankruptcy petition and schedules.  The court observed (at *7):

"Section 727(A)(4)(A) is designed to ensure that the debtor provides honest and reliable information to the trustee and others interested in the administration of the

bankruptcy estate without their having to conduct costly investigations to discover the debtor's true financial condition. [citations omitted]"

The court observed that discharge would be so denied upon demonstrating (at *7):

"(1) the debtor made a false statement under oath;   (2) the debtor knew the statement was false; (3) the debtor made the statement with the intent to deceive; and (4) the statement was material to the bankruptcy case. *In re Singh*, 433 B.R. 139, 154 (Bank. E.D. Pa. 2010)."

As the court further observed (at *7), "a false statement" is:

"made knowingly if the statement is (1) known by the debtor to be false; (2) made without belief in its truth; or (3) made with reckless disregard for the truth. *E.g., In re Young*, 576 B.R. 807, 815 (Bankr. E.D. Pa. 2017)."

The court then observed (at *7-8):

"The requisite intent under §727(a)(4) can be proved by circumstantial evidence or inferred from a pattern of nondisclosure and concealment. *E.g., In re Oakley*, 503 B.R. 407, 426 (Bankr. E.D. Pa. 2013) *aff'd*, 530 B.R. 251 (E.D. Pa. 2015). An omission is considered material under §727(a)(4) when the subject 'bears a relationship to the bankrupt's business transaction or estate, or concerns the discovery of assets, business dealings, or existence and disposition of property.' *Young*, 576 B.R. at 814; *accord In re Chalik*, 748 F.2d 616, 618 (11th Cir. 1984); *see also In re Dawley*, 312 B.R. 765, 784 (Bankr. E.D. Pa. 2004). … proof of actual harm to creditors is unnecessary and the debtor cannot excuse the omission by claiming the property not disclosed was of little or no value to the bankruptcy trustee. *In re Spitko*, 357 B.R 272, 312 (Bankr. E.D. Pa. 2006)."

Further, the court found (*Clark, supra*, at fn. 11):

"'conscious disregard' and 'willful blindness' to be appropriate standards in applying §727(a)(4)(A) and evaluating a debtor's performance of his or her duty to make full and accurate disclosure in the bankruptcy schedules and SOFA."

Applying those standards the court in *Clark, supra*, denied debtor discharge,

having concluded (at *14):

"the picture that forms is of a business owner who had accumulated some measure of personal wealth, but who, after closing his business, faced substantial personal liability… To protect himself, he moved as many assets as he could into his wife's name. … Once those transfers were completed, the Debtor sought bankruptcy relief. …

The Debtor's initial bankruptcy schedules and SOFA were unacceptable. Several material disclosures ... were either incorrect or omitted entirely. ... even if material errors and omissions were not the product of the Debtor's specific fraudulent intent, the Debtor exhibited a reckless disregard of his duty to make, at a minimum, a full financial disclosure in his bankruptcy case. As a result the Debtor's bankruptcy discharge must be denied under 11 U.S.C. §727(a)(4)(A)."

Similarly, *in re Von Kiel*, 461 B.R. 323, 341 (Bankr. E.D. Pa. 2012), *aff.* 486 B.R. 327 (E.D. Pa. 2013), *aff.* 550 Fed. Appx. 105 (3d Cir. 2013), denied discharge in light of multiple false oaths and statements in debtor's bankruptcy papers, having found (at 341):

"the number of false oaths and statements on Debtor's bankruptcy papers [his Schedule and SOFA] evidence more than mere inadvertence or mistake. Debtor specifically chose what he would and would not disclose. ..
"Finally, each of the false oaths and statements relate directly to Debtor's financial affairs and transactions."

Likewise, *see In re Lybrook*, 544 B.R. 537, 544-552 (W.D. Pa. 2015), discharge denied under §727(a)(4)(A) for debtor's failure to disclose assets with total value of $20,000, transfers of other property having a value over $30,000, and self-employment business activities; *In re Katz*, 203 B.R. 227, 234-237 (Bankr. E.D. Pa. 1996), discharge denied under §727(a)(4)(A) for debtor's failure to disclose her interest in a trust (although she claimed it to be a spendthrift trust), her interest in a business venture (even if she asserted it to be worthless), a bank account in which funds flowed for her benefit, real estate used and held for her benefit, and her failure to correct her defective filings.[5]

---

[5] *See also In re Williams*, 2012 WL 3564027 (M.D. Pa. 2012), discharge denied under §§727(a)(2)(A) & 727(a)(4)(A) as debtor failed to disclose his beneficial interest in real estate, ownership of a car, agreement for a pay increase and possible bonus income, contracts for and anticipated income from speaking engagements, and sale of equipment; *In re Vassen*, 2013 WL 492377 (Bankr. D.N.D. 2013), discharge denied under §727(a)(4)(A); *In re Helsel*, 326 B.R. 591, 602 (Bankr. W.D. Pa. 2005) debtor " has an obligation to report any interest he or she has in property, even if it is believed that the asset is worthless or unavailable to the bankruptcy estate" [citation omitted]).

2. Pursuant to §727(a)(4)(A), Debtor Is Denied Discharge If Debtor's Bankruptcy Papers
Failed to Disclose Assets of a Trust That Serves as Debtor's "Sham" or "Alter Ego" or
Whose Assets Are Available to Pay Debtor's Obligations.

A. Violations of Governing Pennsylvania Trust Law.

In the case at hand, the Revocable Trust was formed in Pennsylvania by then

Pennsylvania residents Jeffery and his wife. Its terms include an explicit provision that

its situs is in, and it is governed by the substantive law of, Pennsylvania [fn. 2 above].

Pennsylvania law requires the trustee "take control of and protect" the trust

property, "keep adequate records of the administration of the trust", and "keep trust

property separate from the trustee's own property". *See* 20 Pa.C.S.A §§7779 & 7780:

> "§7779. Control and protection of trust property - UTC 809. A trustee shall take
> reasonable steps to take control of and protect the trust property.
>
> §7780. Recordkeeping and identification of trust property – UTC 810.
> (a) Records. – A trustee shall keep adequate records of the administration of the
> trust.
> (b) Commingling trust property prohibited. – A trustee shall keep trust property
> separate from the trustee's own property.

Each of those provisions was violated, as Jeffery and his wife have admitted the trust had

no bank account of its own (all funds being commingled in Jeffery's bank account) and

no books of account or other records of its own. [SUMF #'s 5-7].

Likewise, purported trustee (Wilhelmina) did not "control or protect" the

Properties. Rather the Properties were controlled by Ivan Jeffery, who acquired them by

inheritance and with funds he provided and paid. He testified to farming the Properties as

his "business"; signed as the Properties' "Owner" and received payment of $20,566

under the 2015 logging contract; signed as the Properties' "Landowner" the February

2016 Notice of Intent with the State of Florida; signed as the farm "Producer" the

Agreement with Marion Water & Conservation District; in his tax return Schedule "F"

held himself out as "Proprietor" of, and deducted the depreciation on and expenses of, the Properties; paid the Properties' real estate taxes; arranged the 2015-2016 acquisition and planting of 5,500 citrus trees and installation of a well, pump and irrigation system thereon at a cost of more than $225,000, the bills for which were addressed to and paid by him; and had himself listed as "named insured" for, and made claims and received payment on, the Properties' insurance [SUMF #'s 8-74 & 93-97].

B. Denial of Discharge Where a Trust Is Debtor's "Sham" or "Alter Ego".

Pursuant to §727(a)(4)(A), debtor's discharge is denied if his bankruptcy papers fails to disclose his interest in, and the property of, a trust which is his "sham" or "alter ego", or whose assets are otherwise available to pay his obligations. *See In re Chantel*, 2015 WL 3988985 (BAP 9th Cir. 2015), *aff.* 694 Fed. Appx. 508 (9th Cir. 2017) affirming §727(a)(4)(A) denial of discharge, because debtors' schedules failed to disclose property held in a trust that was debtors' "alter ego" and thus constituted part of debtors' bankruptcy estate (citing 11 U.S.C. §541(a)(1)).[6] In so ruling, the BAP observed (at *6):

> "In bankruptcy, an alter ego is a nominal third party that has no substantive existence separate from the debtor, and property held by that third party is, therefore, the debtor's own property. *Int'l Fin. Servs. Corp. v. Chromas Techs. Can. Inc.*, 356 F.3d 731, 734, 736-737, 740 (9th Cir. 2004); *In re Pisculli*, 426 B.R. 52, 61 (Bankr. ED NY 2010) (assets of an alter ego of debtor at the time of filing the bankruptcy petition are property of the estate).
> ...
> A trust is an individual's alter ego when there is a unity of interest and ownership between the trust and the individual such that observing the trust form would work an injustice. "

In holding the trust to be debtors' "alter ego" and the trust property thus required to be included in debtor estate, the BAP cited the following (at *6-7):

---

[6] Under §541(a)(1), property of the estate includes "all legal or equitable interests of the debtor in property as of the commencement of the case".

1.*Debtors treated the trust property as their own* (debtors treated trust assets as their own; there was no separation between their personal and the trust checking account; and trust assets were used to pay their personal expenses);

2. *The trust paid no consideration for the properties, which were all provided to the trust by the debtors* (having found all assets of the trust were contributed by the debtors, for which they did not receive adequate consideration from the trust);

3. *Debtors intended to shelter assets via the trust mechanism* (having found that by transferring nominal ownership of valuable assets to the trust, the debtors sought and intended to hinder, delay or defraud their creditors);

4. *Debtors maintained active or substantial control over the operations and decisions of the Trust* (having found debtors exercised dominion and control over trust assets);

5. *A family or close relationship existed between the Debtors and the Trust* (having found either the debtors or a close family member served as trustee and no one outside debtors' family ever participated in management of the Trust).

*See also U.S. v. Hart*, 2006 WL 3377626 (D. AZ. 2006) granting plaintiff creditor summary judgment that a trust was debtor's "alter ego" and the trust's ownership of property a "sham" and thus subject to claims of debtor's creditor, as (among other things) the trust paid only ten dollars for its receipt of valuable property for which debtor executed a $330,000 promissory note in favor of grantor; debtor paid the property taxes; debtor treated the property as his own without paying rent; and debtor deducted property expenses on his schedule to his personal income tax return.

Similarly, trust spendthrift provisions are disregarded and the trust property included in debtor's bankruptcy estate where debtor exercises "control" over the trust for his benefit. Thus, *In re McCullough*, 259 B.R. 509, 518 (D.RI 2001), the court wrote "if the beneficiary exerts sufficient dominion and control over the trust property, the trust can no longer be considered spendthrift [citation omitted]"; found debtor so exercised control over the trust assets and trust checkbook; thus held the trust's spendthrift

provision not enforceable under applicable law; and so further held the trust property should be included in debtor's bankruptcy estate.

Likewise, *In re Wiley*, 2010 WL 5185448 (Bank. N. Mex. 2010) held that, despite a trust's spendthrift clause, the trust assets could be declared property of the bankruptcy estate, as trust and non-trust funds and assets had been commingled:

> "Commingling trust funds with personal funds generally renders the trust unenforceable... Rendering trusts unenforceable where funds are commingled ensures fairness to competing creditors ..."

In the case at hand, the Revocable Trust constitutes debtor Jeffery's "alter ego" as the purported trust paid no consideration for the Properties (which were instead contributed by Jeffery as inheritance from his father or purchased and paid with funds Jeffery generated); the trust had no bank account (all funds commingled in Jeffery's personal bank account) and no books of account or other records of its own; the trust had no tax identification number and filed no tax returns; Jeffery exercised dominion and control over the trust property, even holding that property out as his own (so identifying himself as "Landowner", "Owner, "Proprietor", "Producer", and named insured of the Properties); a close family relationship existed between Jeffery and his wife (who admits not knowing and not fulfilling any of her duties as purported trustee); Jeffery resides in and has been farming the Properties without paying any rent to any trust; and Jeffery (who is familiar with bankruptcy as his company Crescent Brass previously filed bankruptcy) has sought to shelter property in and through the trust from his judgment creditor Artesanias, while improperly withholding and concealing from his bankruptcy filings and from discovery the documents relating to acquisition, farming, and control of the Properties and his management and control of the purported trust.

C. A Trust's Spendthrift Clause Cannot Be Used to Defeat Claims of Existing or Future Creditors of Settlor Who Contributed Funds/Property to the Trust.

Under laws of Pennsylvania and most other states, a settlor cannot use a trust spendthrift clause to defeat claims of existing or future creditors. Bogert on Trusts, §223:

> "Traditional law is that if a settlor creates a trust for the settlor's own benefit and inserts a spendthrift clause, the clause is void as to the then existing and future creditors, and creditors can reach the settlor's interest under the trust. Numerous cases and statutes adhere to this rule, as do the Restatement (Third) of Trusts and the Uniform Trust Code. .. It follows that these self-settled trusts have not been exempt from a bankrupt settlor's bankruptcy estate under the spendthrift trust exemption of the Bankruptcy Code. ...
> The traditional rule is based on the policy that creditors have a right that their debtor pay their claims before he makes provision for his own support or comfort."

Similarly, 34 Standard Pennsylvania Practice 2d, §160:91 states:

> "As to the rights of a settlor's creditors, certain provisions apply whether or not a trust instrument contains a spendthrift provision and notwithstanding the statutory provision relating to discretionary trusts and the ability of a beneficiary's creditor to compel a distribution. Specifically, the property of a revocable trust is subject to claims of the settlor's creditors during the lifetime of the settlor....
> It is against public policy for a person to establish a trust in which that same person retains a beneficial interest in the trust res while placing that res beyond the reach of his or her creditors; the provision barring a creditor from reaching the interest of the settlor in a self-settled trust is unenforceable under the common law of Pennsylvania."

The court thus wrote *In re Tykla*, 353 B.R. 437 (Bankr. W.D. Pa. 2006):

> "It is against public policy for a person to establish a trust in which that same person retains the beneficial interest in the trust res while placing the res beyond the reach of that person's creditors. *In re Mogridge's Estate*, 342 Pa. 308, 311, 20 A.2d 307 (1941). A provision barring a creditor from reaching the interest of the settlor-*cestui que trust* is not enforceable under the common law of Pennsylvania. *Morton v. Morton*, 394 Pa. 402, 404, 147 A. 2d 150, 151-52 (1959)."[7]

---

[7] *See also Prestige Bank v. Investment Properties Group, Inc.*, 2003 Pa. Super. 204, 825 A.2d 698 (2003) in which a purported spendthrift trust was held *not* valid *nor* enforceable against settlor's creditor, and thus creditor was permitted to execute against trust property – as the trustee was settlor's sister; settlor had continued to use the property after he transferred it to the trust; and several years after his transfer of the property to the trust, he guaranteed a loan, the loan defaulted, and the creditor obtained judgment against him.

In accord with the public policy that creditor is not barred from reaching the res

which debtor contributed to a revocable trust, 20 Pa.C.S.A §7745 [UTC 505(a)], states:

> "Whether or not a trust instrument contains a spendthrift provision … (1) During
> the lifetime of the settlor, the property of a revocable trust is subject to claims of
> the settlor's creditors."

Further, 20 Pa.C.S.A. §§7734 and7706 confirm that a trust may not be created

contrary to public policy, and also that the common law of trusts and equity still govern:

> "§7734. Trust Purposes. (UTC 404). A trust may be created only to the extent its
> purposes are lawful and not contrary to public policy.

> §7706. Common law of trusts; principles of equity. (UTC 106). The common law
> of trusts and principles of equity supplement this chapter, except to the extent
> modified by this chapter or another statute of the Commonwealth."

Accordingly, the property of the Revocable Trust, being subject to claims of

settlor's creditors, is included in the bankrupt debtor's estate.

3. In Light of Jeffery's Knowing and Intentional Material Falsehoods in and Omissions from His Bankruptcy Papers, He Should Be Denied Discharge.

In the case at hand, Jeffery's falsehoods and omissions in his bankruptcy papers

demonstrate all elements required for denial of discharge under §727(a)(4)(A).

A. Debtor Jeffery Made False Statements under Oath.

Jeffery's bankruptcy filings (his petition, schedules, and SOFA) were made under

oath; were sworn to be true and accurate by Jeffery at his 341 meeting on August 22,

2016; but were false in at least 13 respects as described above [SUMF #'s 8-108].

For instance, Jeffery's bankruptcy filings falsely denied (among other things) that

he had a farm-related business and owned farm-related property – although he signed as

the Properties' "Owner" a 2015 logging contract under which he received $20,566;

signed as "Landowner" on February 29, 2016 (less than five months before his July 15,

2016 bankruptcy petition), his Notice of Intent to the Florida government; at his 341 meetings admitted having a farm (formerly a pecan and now a citrus) business; paid the real estate taxes; on his tax return Schedule "F" (Profit or Loss from Farming) held himself out as "Proprietor" of the farm business, depreciated the farm property and deducted other farm expenses; had himself listed as named insured for all Properties; and was named beneficiary of the Revocable Trust [SUMF #34-60].

Jeffery's bankruptcy filings further failed to disclose that a few months prior to his July 15, 2016 bankruptcy filing, he entered into a four-year agreement with Cast-Rite Metal under which he receives commissions of more than $1,000 per month [SUMF #76-78]; on March 7, 2016 (four months before his bankruptcy filing), he signed with North Mill his contract to be paid 20% of net proceeds from foreclosure on and resale of Wilton's valuable real estate [SUMF #80-82]; and during June 2016 (within a month prior to his bankruptcy filing), he gave $10,000 to his brother [SUMF #105].

B. Debtor Jeffery Knew His Sworn Bankruptcy Filings Were False.

Debtor Jeffery knew his bankruptcy filings were false. In his July and August 2016 bankruptcy filings he falsely denied having any farm-related property or business. But, as he admitted at his 341 meetings and at deposition, he was conducting a farm (formerly pecan and now 5,500 tree citrus) business; during 2015 signed as "Owner" the contract for, and was paid $20,566 from, harvesting timber on the Properties; during February 2016 signed as "Landowner" the Notice of Intent and as "Producer" his Agreement with Florida governmental authorities to obtain from them a check for farm equipment for the Properties; before and after his bankruptcy filing, listed himself as the farm "Proprietor" in documents he submitted to his tax preparer; and listed himself as the

farm "Proprietor" on and deducted its depreciation and other farm expenses on his federal income tax return Schedule "F" (Profit or Loss from Farming) [SUMF #26-60].

Jeffery also knew he had, but did not disclose in his bankruptcy papers, a four-year agreement with Cast Rite Metal, starting April 2015, under which he was continuing to receive commission checks of approximately $1,000 per month [SUMF #'s 76-78], and his March 7, 2016 contract with North Mill under which he was to be paid 20% of net proceeds of foreclosure on and resale of Wilton's real estate [SUMF #80-82].

Jeffery also knew, but his bankruptcy papers failed to disclose, that less than a month before his bankruptcy filing he made a $10,000 gift to his brother [SUMF #105].

C . Debtor Jeffery's Falsehoods Were Material to His Bankruptcy Case.

Debtor Jeffery's falsehoods in his bankruptcy papers were material to his bankruptcy case as they involve more than a million dollars, including (among others):

> (i) his ownership interest in farm and related Maggie Jones Road properties and improvements thereon having an admitted cost on even Jeffery's own tax depreciation schedule of nearly $900,000 [SUMF #55], which he has insured for more than $1.5 million [SUMF #95], and now have been appraised at a $1,390,000 market value [SUMF $68, Goldin Aff. Ex. 12];

> (ii) a four-year commission agreement with Cast Rite Metal under which Jeffery has been and continues to receive at least approximately $1,000 per month [SUMF #'s 76-78];

> (iii) his signed agreement with North Mill as to which counsel informed him in March 2016 (a few months prior to his bankruptcy filing) he might receive $50,000 to $75,000 from foreclosure on and resale of Wilton's real estate [SUMF #'s 80-82]; and

> (iv) his $10,000 gift less than a month before his bankruptcy filing [SUMF #105].

D. Debtor Jeffery's Falsehoods in His Bankruptcy Papers Were Made Recklessly or with Intent to Deceive.

Jeffery's knowing falsehoods in his bankruptcy filings were intentional and, in any event, at least reckless – particularly in light of (among other things) the large number (at least 13) and materiality of his falsehoods; his signing documents admitting himself to be Owner" and "Landowner", and Schedule "F" and related tax depreciation schedule as "Proprietor", of the properties; he testified to conducting a farm business on the properties; he paid the real estate taxes for the properties; he planted 5,500 citrus trees and installed a 450-foot well, pump, and irrigation system on the properties; he continued to have himself listed, submit claims, and receive funds, as named insured of the properties; he had, but did not disclose, a four-year contract with Cast-Rite Metal Co. and a First Amendment to Participation Agreement with North Mill; after his many falsehoods in his bankruptcy filings were exposed, he failed to amend his schedules or his SOFA to correct his falsehoods; and he withheld and concealed nearly all relevant documents (even after directed to produce them by this Court), including governmental filings, bank statements/checks, emails and other documents that would reveal his falsehoods [SUMF #'s 34-74 & 93-97; Goldin Aff. ¶¶50-53].

### III. <u>CONCLUSION.</u>

WHEREFORE, plaintiff judgment creditor Artesanias respectfully requests its motion for Summary Judgment on its First Count under §727(a)(4)(A) be granted, and judgment debtor Ivan Jeffery be denied discharge of his obligations to Artesanias.

Date: January 30, 2019
/s/Barry L. Goldin                      /s/John R. K. Solt
BARRY L. GOLDIN, ESQ.           JOHN R. K. SOLT, ESQ.
3744 Barrington Drive                2045 Westgate Dr., Suite 404B
Allentown, PA 18104                  Bethlehem, PA 18017
Tel: 610-336-6680  Fax: 610-336-6678   Tel: 610-865-2465  Fax: 610-691-2018
Email: barrygoldin@earthlink.net    Email: jsolt.soltlaw@rcn.com
   *Attorneys for Plaintiff/Judgment Creditor Artesanias Hacienda Real S.A. de C.V.*