**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| In re | : | **Chapter 7** |
| **Ivan L. Jeffery** | : | |
| **Debtor** | : | **Case No. 16-15037 (REF)** |
| _____ | | |
| **Artesanias Hacienda Real S.A. de C.V.** | : | |
| **Plaintiff** | : | |
| **v.** | : | |
| **Ivan L. Jeffery** | : | |
| **Defendant** | : | **Adversary No. 17-00028 (JKF)** |
| _____ | | |

# <u>OPINION</u>

*Background*

The Plaintiff filed this adversary proceeding against the Debtor seeking relief under §§ 523 and 727 of the Bankruptcy Code. The Debtor filed an Answer to the Complaint. Both parties now move for summary judgment to varying degrees. The Plaintiff's motion is limited to Count I while the Debtor's motion is dispositive as to all counts. For the reasons which follow an Order denying the Plaintiff's Motion and denying in part and granting in part the Debtor's Motion will be entered.[1]

---

[1] Requests to declare a debt excepted from discharge and objections to a discharge are within this court's "core" jurisdiction. *See* 28 U.S.C. § 157(b)(2)(I), (J).

*Bases for Relief*

Counts I through III of the Complaint contest the Debtor's entitlement to a discharge generally. 11 U.S.C. § 727(a)(2)(A), (a)(3), and (a)(4)(A). Count IV was previously dismissed on a prior summary judgment motion.[2] Count V asks only that Plaintiff's claim be excepted from discharge under 11 U.S.C. § 523(a)(6).

*Presumption, Burdens of Proof*
*and Evidentiary Standards*

Both legal theories entail a high evidentiary burden. Objections to discharge are liberally construed in favor of the debtor and strictly construed against the objector. *Rosen v. Bezner,* 996 F.2d 1527, 1531 (3d Cir.1993) (admonishing that denying a debtor his discharge "is an extreme step and should not be taken lightly.")  The same presumption applies to exceptions to discharge. *In re Cohn,* 54 F.3d 1108, 1113 (3d Cir.1995).

Likewise are allocated the respective burdens, as well as standards, of proof. A creditor objecting to a debtor's discharge under § 727(a)(4)(A) has the burden of proof. Fed. R. Bankr.P. 4005. So does a creditor objecting to the dischargeability of an indebtedness. *In re Cohn, supra, id.* To meet either burden, the creditor must prove its case by a preponderance of the evidence. *In re Raftogianis*, 2012 WL 2885469, at *5 (Bankr. E.D. Pa. July 13, 2012); *Grogan v. Garner,* 498 U.S. 279, 287-88, 111 S.Ct. 654, 659-60, 112 L.Ed.2d 755 (1991)

---

[2] Case No. 16-15037, ## 49, 50, also reported at 2018 WL 1605307 (Mar. 29, 2018 Bankr.E.D.Pa.)

*Summary Judgment Standard*

Motions for summary judgment are governed by Rule 56 of the Federal Rules of

Civil Procedure ("Fed.R.Civ.P.").[3] Pursuant to Rule 56, summary judgment should be

granted when the "pleadings, depositions, answers to interrogatories, and admissions

on file, together with the affidavits, if any, show that there is no genuine issue as to any

material fact and that the moving party is entitled to a judgment as a matter of

law." Fed.R.Civ.P. 56(a). For purposes of Rule 56, a fact is material if it might affect the

outcome of the case. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct.

2505, 2510, 91 L.Ed.2d 202 (1986).

The moving party has the burden of demonstrating that no genuine issue of fact

exists. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2552–53, 91

L.Ed.2d 265 (1986). The court's role in deciding a motion for summary judgment is not

to weigh evidence, but rather to determine whether the evidence presented points to a

disagreement that must be decided at trial, or whether the undisputed facts are so one

sided that one party must prevail as a matter of law. *See Anderson v. Liberty Lobby,*

*Inc.,* 477 U.S. at 249–252, 106 S.Ct. at 2510–12. In making this determination, the court

must consider all of the evidence presented, drawing all reasonable inferences

therefrom in the light most favorable to the nonmoving party, and against the movant.

See *Halsey v. Pfeiffer,* 750 F.3d 273, 287 (3rd Cir. 2014).

To successfully oppose entry of summary judgment, the nonmoving party may

not simply rest on its pleadings, but must designate specific factual averments through

---

[3] Made applicable to adversary proceedings by B.R. 7056.

the use of affidavits or other permissible evidentiary material that demonstrate a triable

factual dispute. *Celotex Corp. v. Catrett,* 477 U.S. at 324, 106 S.Ct. at 2553. Such

evidence must be sufficient to support a jury's factual determination in favor of the

nonmoving party. *Anderson, supra,* 477 U.S. at 249, 106 S.Ct. at 2511. Evidence that

merely raises some metaphysical doubt regarding the validity of a material fact is

insufficient to satisfy the nonmoving party's burden. *Matsushita Electric Industrial Co.,*

*Ltd. v. Zenith Radio Corp.,*475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538

(1986). If the nonmoving party fails to adduce sufficient evidence in connection with an

essential element of the case for which it bears the burden of proof at trial, the moving

party is entitled to entry of summary judgment in its favor as a matter of law. *Celotex*

*Corp. v. Catrett*, 477 U.S. at 322–23, 106 S.Ct. at 2552–53.

*Count I – False Oath or Account*

The first of the three bases for objecting to discharge is § 727(a)(4)(A). That

subparagraph provides that the court shall grant the debtor a discharge, "unless ... the

debtor knowingly and fraudulently, in or in connection with the case ... made a false

oath or account." 11 U.S.C. § 727(a)(4)(A). It is designed to ensure that the debtor puts

dependable information in the hands of those interested in the administration of the

bankruptcy estate without the need for the trustee or a party in interest to engage in

costly, exhaustive investigations to ferret out the truth concerning the debtor's financial

condition. *See, e.g., In re Burnley,* 1999 WL 717215, at **2–3 (Bankr.E.D.Pa. Aug. 27,

1999).

4

To prove a § 727(a)(4)(A) claim, the Plaintiff must demonstrate (1) that the debtor made a statement under oath; (2) that the statement was false; (3) that the debtor knew that the statement was false, (4) that the debtor made the statement with fraudulent intent; and (5) that the statement was related materially to the bankruptcy case. *See In re Spitko,* 357 B.R. 272, 312 (Bkrtcy.E.D.Pa.2006). The requirement that a false statement was made knowingly may be established by proof that the debtor knew the truth "and nonetheless willfully and intentionally [swore] to what is false." *In re Singh*, 433 B.R. 139, 154 (Bankr.E.D.Pa. 2010) (*quoting Cadle Co. v. Zofko*, 380 B.R. 375, 382 (W.D. Pa. 2007). "However, case law provides that reckless disregard for the accuracy of the of the oaths made in a bankruptcy case satisfies the scienter requirement under subparagraph (4)(A)." *In re Clark*, 2018 WL 4940799, at *7 (Oct. 10, 2018 Bankr.E.D.Pa.)

The requisite intent under § 727(a)(4) can be proved by circumstantial evidence or inferred from a pattern of nondisclosure and concealment. *E.g., In re Oakley*, 503 B.R. 407, 426 (Bankr. E.D. Pa. 2013), *aff'd*, 530 B.R. 251 (E.D. Pa. 2015). An omission is considered material under § 727(a)(4) when the subject "bears a relationship to the bankrupt's business transactions or estate, or concerns the discovery of assets, business dealings, or existence and disposition of property." *Hampton v. Young, (In re Young)*, 576 B.R. 807, 814 (Bankr.E.D.Pa. 2017); *see also In re Dawley*, 312 B.R. 765, 784 (Bankr. E.D. Pa. 2004). While an honest mistake or oversight is not sufficient to deny a debtor his or her discharge, proof of actual harm to creditors is unnecessary and the debtor cannot excuse the omission by claiming the property not disclosed was of

5

little or no value to the bankruptcy trustee. *Spitko*, 357 B.R. at 312.

The purported false oaths or accounts upon which this count is based are found in the Debtor's Voluntary Petition, his Schedules and his Statement of Financial Affairs (SoFA). Section 301 of the Bankruptcy Code requires the Debtor to file a petition requesting bankruptcy relief. 11 U.S.C. § 301(a). The rule corresponding to that section sets forth the requirements of what the petition must contain. *See* B.R. 1005. In addition to the petition, § 521 requires the debtor file the following: schedule of assets and liabilities, and schedule of current income and expenditures, a schedule of executory contracts and unexpired leases and a statement of financial affairs. 11 U.S.C. § 521(a)(1)(B); B.R. 1007(b). Importantly for present purposes, "[a]ll petitions, schedules, statements and amendments thereto shall be verified or contain an unsworn declaration as provided in 28 11 U.S.C. § 1746." B.R. 1008. *See In re Kasal,* 217 B.R. 727, 734 (Bankr.E.D.Pa. 1998) ("Section 727(a)(4)(A) applies "not only to false statements made under sworn oath, but also to unsworn declarations under penalty of perjury, such as those made by a debtor on Official Bankruptcy Forms.") The Plaintiff identifies about a dozen instances of this Debtor having failed to accurately list information required below or of his having omitted such information altogether. As to each, the Debtor offers an explanation to show that the shortcoming was either inadvertent or immaterial.

*Method of Analysis*

While the alleged disclosures appear in ¶ 50 of the Plaintiff's Motion, the Court will take them out of the order in which they were plead. The court will address each starting from the lowest degree of perceived seriousness of the non-disclosure.

6

*Characterization of the*
*Artesanias Judgment*

In his Schedule E/F, the Debtor lists first among his unsecured creditors the

Plaintiff Artesanias. Artesanias identifies two falsehoods here: first the Debtor has

stated the wrong numerical amount of the claim; and second, the debt is deemed

disputed. This is without legal foundation, it goes on, because the judgment was never

appealed or otherwise challenged. Defendant's response to this is that the designation

of the debt as disputed is a simple error which is not material to the bankruptcy case.

Def.'s Mot. ¶ 18.

*Property Kept*
*Not at Home*

Question #22 of the SoFA asks if the debtor has "stored property in a storage

unit or place other than your home within 1 year before you filed for bankruptcy." To this

question, the Debtor answered *No.* Plaintiff maintains that this answer is yet another

falsehood: the Debtor testified that his tractors and other farm equipment are stored at

42710/42810 Maggie Jones Road, Paisley, Florida. That address is different from the

address stated on his petition: 62 Cedar Commons Lane, Birdsboro, Pennsylvania. Pl.'s

Mot. ¶ 50(vi). Thus, the tractors and equipment should have been disclosed on the

SoFA.

Debtor points out that the tractors and equipment were listed on his Schedule

A/B. Def.'s Mot. p. 6-7. And as to their exact location (i.e. at the Debtor's residence or

elsewhere), the machinery may have been in the fields on property adjacent to his

residence or in the barn on his residence. Def.'s Mot. ¶¶ 25-26 citing Ex. B, Cont'd 341

Meeting Tr., p. 87.

7

*Insurance Policies*

Item #31 on Schedule A/B requires disclosure of the debtor's interest in insurance policies, e.g., "health, disability, life, health saving accounts, credit, *homeowner's*, or renter's insurance." [emphasis added] According to Plaintiff, in addition to the two life insurance policies which *were* disclosed, there exists a homeowner's policy which *was not* disclosed. Pl.'s Mot. ¶ 50(x); Pl.'s Ex. 53-56. Defendant's response is that his counsel did not list the interest in the homeowner's insurance on Schedule A/B but rather provided evidence of the coverage to the Chapter 7 Trustee prior to the 341 meeting. That, counsel explains, is the custom in the Reading Division of this district. Counsel adds that this is counsel's practice and has been for years and that no trustee has ever required or requested otherwise. Def.'s Resp. p. 5.

*Commissions*

The next falsehood which Plaintiff identifies pertains to Schedule G, Executory Contracts and Unexpired Leases. Pl.'s Mot. ¶ 50(viii). At that time, Defendant was receiving monthly commissions of $1,000 from Cast-Rite Metal, Inc. but he failed to disclose that on his Schedule G. In his defense, Debtor points out that $1,000 *does* appear on his Amended Schedule I. Def.'s Resp. 4.

*Claim Arising from Junior
Participation Agreement*

Item #33 on Schedule A/B requires a debtor to disclose "[c]laims against third parties, whether or not you have filed a lawsuit or made a demand for payment." Plaintiff maintains that the Defendant should have disclosed the claim which he holds against his own company, Wilton. That claim arose out of his participation in the $800,000 line

8

of credit and mortgage loan which North Mill Capital extended to Wilton, Debtor's

company. He contributed $250,000 to that financing. By March 2016—four months prior

to bankruptcy—the debt had reached $1.2 million. *See* Compl. ¶ 70; Pl.'s Mot. Ex.63. It

remained unpaid on the date of his bankruptcy filing. Pl.'s Opp'n. to Def.'s Mot. Ex. 78,

p. 48. For that reason, says Plaintiff, the claim should have been disclosed.

The Debtor's explanation is that, as events turned out, he had little chance of

recovery on that claim and so did not disclose it. He explained that under an

arrangement that he reached with North Mill (the Amendment to the Junior Participation

Agreement) that he could expect some payment only if the Wilton real estate was sold

to a third party. As it turned out, North Mill foreclosed upon the property prepetition

thereby rendering the amendment to the agreement inoperative. *See* Def.'s Resp. p. 5.

So, by the time of his bankruptcy filing, the claim against Wilton was gone.

*Sale of Timber*

Question #18 asks whether within the 2 years prior to bankruptcy the Debtor sold

traded or otherwise transferred any property to another other than in the ordinary course

of business. The Debtor again answered *No*. Plaintiff maintains that this is a falsehood

because he sold pecan timber for $20,000 during this time period. This is reflected in

the transcript of his 341 Meeting. Pl.'s Mot., Ex. 9, at p 45. Defendant puts this down to

an honest mistake and sees it having no materially adverse effect on the bankruptcy

estate. Def.'s Mot. ¶ 37.

*Gifts*

Question #13 of the SoFA asks if the Debtor made gifts of $600 or more within 2

9

years before filing bankruptcy. In both his original and amended SoFA the Debtor

answered *No*. The Plaintiff maintains that this is false because at the Debtor's 341

meeting he admitted to making a payment of $10,000 to his brother in the month prior to

bankruptcy. *See* Pl.'s Mot. Ex. 9, Tr. Cont'd 341 Mtg. Defendant explained the payment

as follows: his brother split his time between Michigan and Florida; that he helped the

Debtor around the farm which included cutting down pecan trees; that they had no

written payment agreement because they were family; that his brother lost his Michigan

home to a fire and there was delay in collection of insurance proceeds; and for that

reason the Debtor would send him money. *Id.*,8:20-9:24. In other words, Debtor sees

the $10,000 as payment in exchange for services rendered and not a gift. Def.'s Mot. ¶

38.

*Debtor's Businesses*

The next three alleged falsehoods involve the same subject matter and so a

single analysis will suffice. They pertain to the Debtor's farming business in Florida.

First, Item # 4 of the Voluntary Petition required the Debtor to list "any business names

and Employer Identification Numbers used in the last 8 years." His response was *None*.

That statement, says Plaintiff, is false because at the 341 Meeting the Debtor testified

that he operated a business under the name Paisley Pecan Farms. Compl. ¶ 60; Pl.'s

Mot. ¶¶ 50(iii) and (ix), Ex. 8 at 92. Second, Item #12 of the Voluntary Petition required

the Debtor to state whether he is a "sole proprietor of any full- or part-time business."

Debtor answered in the negative but Plaintiff discovered from the Debtor's tax returns

that he was operating a pecan farming business. Compl. ¶ 58. Third, Question #27 of

the SoFA asks whether, within 4 years prior to bankruptcy, the Debtor owned a

business or was a sole proprietor of, a member of an LLC or LLP, a partner of a

partnership, an officer, director or managing executive of a corporation, or an owner of

at least 5% of the voting or equity securities of a corporation. Here, again, Plaintiff

contends, the Debtor failed to disclose his farm in Florida.[4] Pl.'s Mot. ¶ 50(vii).

In response, Defendant explained that he did not seriously think his farming

activity to be anything other than casual. He never made money farming pecans and so

felt that he did not have to report them here. Def.'s Mot., ¶¶ 22, 24

*The Revocable Trust,*
*the Debtor's Residence*
*and his Farming Business*

The final group of non-disclosures which Plaintiff identifies involve the Debtor's

beneficial interest in an estate planning trust. He is alleged to have used that trust to

hide the real property at which he now resides and where he operates his citrus farm.

A debtor's interests in trusts are required to be disclosed on Schedule A/B at

Item #25. There, the Debtor checked *None*. Plaintiff maintains that this is false: Debtor

is the principal beneficiary of the Wilhelmina Jeffery Revocable Trust. Pl.'s Mot. ¶ 50(xi).

Defendant's response is that his only interest in the trust is contingent: it arises if two

conditions are met: first, he must survive his wife *and* second, the income must be

necessary for his maintenance and support. *See* Def.'s Mot. ¶ 33. Because a debtor's

contingent future interest in the income of a trust containing a spendthrift clause is not

---

[4]He is also alleged to have failed to list his commission agreement with Cast-Rite Metal, and his agreement with North Mill to be paid something from the sale of the Wilton real estate towards his claim for his junior participation interest in the credit facility which North Mill extended to Wilton. The non-disclosure of the commission has been dealt with *supra* and the agreement he reached with North Mill has nothing to do with a business but involves his participation in a loan to Wilton Armetale.

11

property of the estate, he explains, he was not required to list it in Item #25. *Id.* ¶ 34.

But it is more than mere non-disclosure of Debtor's interest in a trust that Plaintiff considers culpable. Plaintiff maintains that the Debtor used the Trust to testify falsely in his schedules as to what real property he holds and what business he engages in. Question #1 on Schedule A/B asks if the debtor "owns or has any legal or equitable interest in any residence, building land, or similar property." Debtor's response was to list only the real estate in Birdsboro, Pennsylvania. The Plaintiff points out that Defendant failed to list his interest in the property at 42584, 42600, and 42710/42810 Maggie Jones Road in Paisley, Florida. This property, Plaintiff goes on, is worth approximately $1.4 million. Pl.'s Mot. ¶ 50(i). Similarly, in response to Items ## 37 and 46 of Schedule A/B, the Debtor stated that he did not own any business-related or farm-related property. Plaintiff maintains that this is another false answer because Debtor operates his citrus farm at the 42600 and 42710/42810 Maggie Jones Road addresses. Debtor responds that he does not own any of those three real estate parcels.  That property is owned by the Wilhelmina S. Jeffery Revocable Trust. *See* Def.'s Mot, ¶¶ 27-36.

Plaintiff's rejoinder is that the Trust is a sham. Debtor has been using its property (i.e., the Maggie Jones Road properties) first as a pecan farm and now to grow citrus. Ex. 9, Tr.  79:6-10. He has admitted to paying real estate taxes for all three properties. Ex. 18, Dep. I. Jeffery 224:20-231:8. He also represented himself to various Florida governmental authorities as the owner of these same properties which he now claims are trust property. *Id.* at 206:30-210:5. He also signed the Timber Sale Contract—the

12

contract which was discussed *infra* regarding his failure to disclose the proceeds from the sale of the pecan timber—as Owner. Ex. 10A. He also did business with at least three vendors to the citrus farm in his own name instead of as a representative of the trust. Exs. 49A – 52B. His tax returns for the years 2012 – 2016 list him as the "proprietor" of a pecan, and then, citrus growing enterprise. Ex. 39, 41, 43, 45, and 47. For the same years, the Debtor — and not the Trust—reported income and expenses related to farming property on *his* tax returns. Ex. 40, 42, 44, 46, and 48. For all intents and purposes, says Plaintiff, the Debtor has ignored the Trust treating its property as his own.

Debtor's response is two-fold: First, he maintains that eight years prior to his bankruptcy, the Trust was created and for a legitimate purpose: estate planning. And the transfer of the property which makes up the corpus of the trust, the Lake County Properties, was disclosed in the Statement of Financial Affairs. *See* SoFA, Question #19 (transfers of property within last 10 years to self-settled trusts of which debtor is a beneficiary). Second, what the Plaintiff is attempting to do here is to avoid the transfer of the Lake County Properties to the Trust as a fraudulent transfer. However, only the Chapter 7 Trustee is empowered to bring such an action. *See* 11 U.S.C. § 548(e)(1) (allowing avoidance of transfer within last 10 years to self-settled trust where transfer was made with actual intent to hinder, delay, or defraud entity to which debtor was indebted). The Chapter 7 Trustee in this case undertook no such action and, therefore, says Defendant, the Plaintiff may not attempt the same indirectly. Def.'s Resp. 6-7.

13

*Analysis of Disclosures*

The false oaths which Plaintiff identifies in support of his objection break down into 3 groups: mis-disclosures, non-disclosures and partial non-disclosures. The mis-disclosures group consists of these items of property which were disclosed either erroneously or were cured by amendment. They consist of the understated Artesanias judgment, the failure to disclose property kept not at the debtor's residence, failure to list the homeowner's insurance policy, and the amendment to Schedule I to list the Cast-Rite commission. The group of non-disclosed items or information consist of the claims against Wilton under the Junior Participation Agreement, the proceeds of the sale of timber, the gift to the Debtor's brother, and the failure to disclose his pecan/citrus growing business. The last group, that property either partially or indirectly disclosed, involves the Trust of which Debtor is a beneficiary and the Florida real estate which is owned by that Trust.

*Items Mis-Disclosed*

Beginning with Debtor's alleged understating of the Artesanias judgment, the Court finds that there is a simple explanation for the numerical difference: the amount of the debt set forth in the schedule ($900,658.17) does not contain the almost $22,799.70 of prejudgment interest which was awarded. *See* Pl.'s Mot. Ex. 5, Praecipe to Enter Judgment. So, this is not a wholesale denial of the debt: the principal amount of the debt is admitted. It is just the pre-judgment interest component which is missing. As to why it was omitted, the record is silent.

Turning next to the contention that the Debtor failed to disclose property kept at a place other than his residence, the Court finds Plaintiff's reading of the record to be hyper-technical. It is correct that on the petition date, the tractors and equipment were not at Debtor's residence. On that date, the tractors and equipment were at the Lake County Properties in Florida and the Debtor's residence was in Birdsboro, PA. But the Debtor changed his residence just two weeks into his Chapter 7 case. *See* Case No. 16-15037, #19 (Notice of Change of Address). Thereafter he lived at Maggie Jones Road, Paisley, Florida, (the Lake County Properties) which is where the tractors and equipment were. So, this is not an instance of hiding or physically concealing assets.

The same can be said of the decision not to list the homeowner's insurance policy. That policy should have been listed with the other insurances. The Third Circuit has held that insurance policies are property of the estate "even though the policy has not matured, has no cash surrender value and is otherwise contingent." *Estate of Lellock v. Prudential Ins. Co.*, 811 F.2d 186, 189 (3d Cir.1987) (*quoting In re McCulloch & Son, Inc.*, 30 B.R. 7, 8 (Bankr.D.Or.1983)). However, the Debtor relied on his counsel here in not disclosing and counsel stated that he informed the Trustee of the policy.

Next, the Debtor's explanation of the untimely disclosure of the monthly commission from Cast-Rite is puzzling but not necessarily indicative of intent to deceive. It is correct, as he says, that the commission appears on the Amended Schedule I but that filing raises two questions: first—and aside from the question of whether the commissions were part of an executory contract and so were reportable on Schedule G—Line 2 of Schedule I requires disclosure of "gross wages, salaries, and

15

*commissions*." [emphasis added]. This is where the commission should have been disclosed. It was not. Instead, it appears in Line 8h of Amended Schedule I which requires a debtor to list *Other monthly income*. But more importantly, it is unclear why it would not be until 6 weeks into the case that the Debtor amended this schedule to list the commission. *See* Case No. 16-15037, #34 Amendment to Schedule I. In any event, the evidence in this record does not indicate this to be a falsehood.

*Items Wholly Omitted*

The Court turns its attention to the omissions from the schedules and SoFA. It begins here with the Debtor's interest in the Junior Participation Agreement. This refers to the line of credit and mortgage loan made by North Mill to Wilton. The Debtor contributed $250,000 to the loan and the obligation was unpaid as of his bankruptcy filing. But pursuant to the agreement he reached with North Mill which amended his rights under that obligation, the Debtor appears to have bargained any further rights against his former company. Under those circumstances, he need not have disclosed the claim against Wilton.

Like his decision not to disclose the claim against Wilton, the explanation for not disclosing his pecan and citrus enterprise was based on a perceived lack of value of that enterprise. Such an explanation is simply wrong as a legal matter. Any business—regardless of its profitability or operational status—must be disclosed. *In re Isaacson*, 478 B.R. 763, 788 (Bankr.E.D.Va. 2012) (finding that non-disclosure of business is material because it germane to the discovery of the a debtor' assets and state of their financial affairs, irrespective of whether disclosure would have yielded a more favorable

16

outcome for creditors or estate administration); *accord In re Tylee*, 512 B.R. B.R. 409, 417 (Bankr. E.D.N.Y. 2014); *In re Haynes*, 549 B.R. 677, 686-87 (Bankr.D.S.C. 2016). However, here again the record does not cast Debtor's reasoning in a false light.

The next two examples of non-disclosure begin to call into question the Debtor's intentions. The failure to have listed the proceeds of sale of the timber is a serious omission. Here, again, however, the record is insufficient to make a finding. Other than the 341-meeting testimony, the only evidence regarding this property is the Timber Sale Contract and a report of the timber that was cut. Pl.'s Mot. Ex. 10A, 10B. This information does not even tell the court when—exactly—the $20,000 was received. In fact, the excerpt of the transcript from the 341 meeting upon which Plaintiff relies is fragmentary: upon reading it, one discovers that the relevant discussion begins on a previous page which is not included in the excerpt.

The $10,000 payment to the Debtor's brother also is troubling. While the Debtor was candid as to why he paid his brother the way he did, the underlying circumstances make this explanation suspect. This was around the time that the North Mill and Artesanias judgments were entered against him and Wilton. Those judgments totaled $1.9 million. That might lead to the conclusion that the Debtor paid a relative before a bankruptcy filing froze his assets.[5] [6] Here again, the evidence is sufficiently equivocal to preclude a finding as to the Debtor's state of mind.

---

[5] The payment should also have been set forth as an insider transfer in response to Question #7 of the SoFA. It was not.

[6] Had the Trustee known of this payment, he would likely have sought to avoid and recover it as a preferential transfer.

17

*The Trust and the*
*Real Estate In It*

That takes the Court to the final group of assets: those which Debtor only

partially or indirectly disclosed: the Trust and the Florida real estate owned by it. To

reiterate, Debtor did not disclose his interest in the Trust because it is a spendthrift trust.

Such trusts are not property of the estate. *See* 11 U.S.C. § 541(c)(2). The Court's

review of the language of the instrument would appear to confirm that it is a spendthrift

trust and so is not reachable by creditors. Pl.'s Mot. Ex. 57, at ¶ 14. Even so, it should

have been disclosed. *See In re Katz*, 203 B.R. 227, 234 (Bankr. E.D. Pa. 1996) (holding

that the presence of even a spendthrift trust should be disclosed, although it is not

property of the debtor's estate); *In re Comu*, 2014 WL 3339593, at *47 (July 8, 2014,

Bankr.N.D.Tex.) ("And even if a particular asset should ultimately be excluded from the

property of the estate, a debtor's interest in that asset must be disclosed and failure to

do so may constitute fraud on the part of the debtor"); cf. *In re Patterson*, 70 B.R. 124,

130 n. 3 (Bankr.W.D.Mo.1986) (while spendthrift trusts should be disclosed, their

nondisclosure does not in itself mandate a denial of a discharge where the debtor

rebuts the fraudulent intention of its omission)

While the Debtor did not disclose the Trust directly, he did elsewhere disclose

transfers of the Florida property into that trust. SoFA # 19. This would constitute

evidence that the Debtor had a good faith belief that the Florida property belong to the

Trust and not him and so should not be reported in his schedules.

The Court having found that none of the examples of alleged falsehoods cited by

Plaintiff are so conclusively established (or not) that a trial is unnecessary to make

informed findings, the cross-motions as to Count I must be denied.

*Count II – Concealment/Transfer*

The Defendant seeks summary judgment as to the second count. That count is

premised on § 727(a)(2). That paragraph will deny a discharge to the debtor who

> with intent to hinder, delay, or defraud a creditor or an officer of the estate
> charged with custody of property under this title, has transferred, removed,
> destroyed, mutilated, or concealed, or has permitted to be transferred,
> removed, destroyed, mutilated, or concealed—
>
> (A) property of the debtor, within one year before the date of the filing of
> the petition; or
>
> (B) property of the estate, after the date of the filing of the petition;

11 U.S.C. § 727(a)(2). For purposes of denial of discharge, concealment may occur

both before as well after a bankruptcy filing. In this context, the Third Circuit has

"defined concealment to include preventing the discovery of or withholding of knowledge

of the property." *Applebaum v. Henderson (In re Henderson),* 134 B.R. 147, 157

(Bankr.E.D.Pa.1991)

*Property Alleged to
Have Been Concealed*

Paragraph 74 of the Complaint alleges that the following property was concealed:

(a) Debtor's interest in the Lake County Properties, including the real
estate, houses and barns thereon, the citrus trees and improvement,
and machinery and equipment;

(b) The proceeds from the sale of the timber and other revenues from the
Lade County Properties

(c) Funds paid for farming expenses and property expenses

19

(d) Payment of $10,000 to Defendant's brother for work performed; and

(e) The Defendant's interest in the Junior Participation Agreement with North Mill.

At ¶¶ 48 – 55 of his motion, Debtor refutes any claim of intent to conceal on his part. As to the Lake County Properties, he continues to maintain that the Revocable Trust owned that real estate (including the timber logged from it), and so was never concealed by him. *Id.* ¶¶ 35, 49. And as to the $10,000 payment to his brother, that transfer was in payment for work performed, and was not a gift. *Id.*

As to the expenses for farming and property maintenance, Debtor contends that the Chapter 7 Trustee has resolved that issue. Def.'s Mot. ¶ 50; *See Feldman, Trustee v. Jeffery, et ux*, Adv. No. 18-0087. That is however beside the point: the Trustee's suit was based on avoidance and recovery of constructively fraudulent transfers. This suit is based on the discharge provision of the Bankruptcy Code. Specifically, it seeks denial of a discharge where the debtor is guilty of deceit as to his financial condition. Whatever resolution the Debtor and his wife reached with the Trustee as to the legality of certain prepetition transfer, that has nothing to do with his state of mind when he decided not to disclose such transfer in his main bankruptcy case.

Finally, Debtor contends that he did not conceal anything about his participation in the secured credit line that North Mill extended to Wilton. Contrary to Plaintiff's allegation that he concealed an expected 20% share from the proceeds from the sale of the Wilton real estate, the value of that arrangement was zero. This is because the Debtor never expected to receive any return from the money he contributed to the North Mill Financing. Def.'s Mot. ¶¶ 52-55.

20

Once again, the Debtor has missed the point: It matters not that the ultimate value of his interest in the agreement was worthless. The question rather is why he did not disclose this prepetition. The agreement was reach in March 2017 which was four months before *his* bankruptcy and 6 months before *his company's*. At that time, he could not have known that he would not receive any money from the sale of the Wilton real estate. However speculative, it was required to be disclosed. So, this is not a failure of business judgment but one of truthfulness. And because this lack of candor is credibly raised, the Debtor's Motion for Summary Judgment as to Count II must be denied.

*Count III – Records Concealment*

The third count of the complaint alleges that because the Debtor refused to turnover his tax return for 2015, he should be denied a discharge under 11 U.S.C. § 727(a)(3). That subsection will deny a discharge to the debtor who

> has concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information, including books, documents, records, and papers, from which the debtor's financial condition or business transactions might be ascertained, unless such act or failure to act was justified under all of the circumstances of the case;

11 U.S.C. § 727(a)(3) (emphasis added). The Third Circuit has explained that

> the purpose of [this provision] is to give creditors and the bankruptcy court complete and accurate information concerning completeness of the disclosure requisite to a discharge. The statute also ensures that the trustee and creditors are supplied with dependable information on which they can rely in tracing a debtor's financial history. Creditors are not required to risk having the debtor withhold or conceal assets under cover of a chaotic or incomplete set of books or records.

*Meridian Bank v. Alten,* 958 F.2d 1226, 1230 (3d Cir.1992) If a creditor believes that the debtor's bankruptcy violates these principles, the creditor must show "(1) that the debtor

21

failed to maintain and preserve records, and (2) that such failure makes it impossible to ascertain the debtor's financial condition and material business transactions." *Id.* at 1232. The creditor need not prove that the debtor had an intent to defraud. *See Matter of Juzwiak,* 89 F.3d 424, 430 (7th Cir. 1996) ("Although the ultimate goal of § 727(a)(3) is to distinguish between the honest debtor, who should be granted the privilege of discharge, and the abusive or unworthy debtor, who does not deserve such a benefit, creditors do not need to prove that the debtor intended to defraud them in order to demonstrate a § 727(a)(3) violation.")

Debtor states that the 2015 return was provided to the Chapter 7 Trustee on October 20, 2016 and to Plaintiff's counsel on February 14, 2017. Moreover, says Debtor, there is no fixed date by when a debtor must provide tax returns to creditors. Def.'s Mot., ¶¶ 58-59. Plaintiff concedes the point as a technical matter and instead focuses on the larger context wherein, he maintains, Debtor has withheld information that would allow the Trustee and creditors to ascertain the scope and value of Debtor's holdings. This allegedly belated turnover of the Debtor's tax return is a part of that delay.

For its part, the Court sees the eventual production of the return as mooting the question. Plaintiff has not alleged any prejudice or other harm resulting from Defendant's production of the turnover when he did. Accordingly, Debtor's request for summary judgment as to Count III will be granted.

*Count V – Willful and Malicious Injury*

The last count of the Complaint proceeds under an exception to discharge

provision of the Bankruptcy Code. Specifically, the count is premised on 11 U.S.C. §
523(a)(6). That subsection provides that "[a] discharge under section 727 ... of this title
does not discharge an individual debtor from any debt—... for willful and malicious injury
by the debtor to another entity or to the property of another entity." 11 U.S.C.
§ 523(a)(6). This type of claim "generally relates to torts and not to contracts." 4 *Collier
on Bankruptcy,* ¶ 523.12[1]. By its terms, it may apply to a broad range of harmful
conduct. *Id.* To fall within this exception, the injury must have been both
willful *and* malicious. *Id.* ¶ 523.12[2]. The two elements are "distinct requirements." *In re
Jacobs*, 381 B.R. 128, 136 (Bankr.E.D.Pa. 2008). The term "willful" refers to a deliberate
or intentional injury, not just a deliberate or intentional act that leads to injury. *In re
Coley,*433 B.R. 476, 497 (Bkrtcy.E.D.Pa.2010) (citing *Kawaauhau v. Geiger,* 523 U.S.
57, 118 S.Ct. 974, 140 L.Ed.2d 90 (1998)). The plaintiff must establish that the debtor
"purposefully inflict[ed] the injury or act[ed] in such a manner that he is substantially
certain that injury will result." *In re Conte,* 33 F.3d 303, 305 (3d Cir.1994). "Malice"
refers to actions that are wrongful and without just cause or excuse, even in the
absence of personal hatred, spite or ill-will. 4 *Collier, supra* ¶ 523.12[2].

The Plaintiff has not moved for summary judgment on this count; it is the
Defendant who seeks its disposition in his favor. He reads Count V to cite seven
instances of willful and malicious misconduct:

A.  Representing to the Plaintiff that the Defendant owned valuable real
estate in Florida in order to induce the Plaintiff to accept a personal
and unconditional guaranty from the Defendant and to continue to
produce and deliver inventory for Wilton;

B.  Refusing to consent to a judgment against Wilton in the Plaintiff's
collection against it;

23

C. Consenting to the sale of Wilton's non-real estate assets in exchange for the First Amendment to Junior Participation Agreement;

D. Consenting to and not opposing inflated North Mill confessions of judgment;

E. Not opposing North Mill's foreclosure action;

F. Knowingly and intentionally favoring the interest of North Mill over the Plaintiff; and

G. Knowingly and intentionally preventing the Plaintiff from recovering on its judgment

*See* Def.'s Mot. ¶ 64(a) – (g). But as to those seven, the Debtor is correct in observing that the first such violation (misrepresentation of Debtor's real estate holdings) sounds more in the way of actual fraud, i.e., § 523(a)(2)(A), rather than direct, intentional injury, § 523(a)(6). For that reason, the court will analyze the allegation of misrepresentation in the context of an actual fraud non-dischargeability challenge (§ 523(a)(2)(A)) and thereafter review the remaining six under the willful and malicious injury standard (§523(a)(6)). *See* B.R. 7015 (making F.R.C.P. 15(b)(2) available to allow court to rule on issues tried by consent).

*Defendant's Representations*
*Regarding Real Estate*

Again, it is alleged that as an inducement to Plaintiff to ship more merchandise to Wilton (the Debtor's company), the Debtor offered his personal guaranty to Plaintiff. To convince Plaintiff that the guarantee had value, Debtor is alleged to have represented that he owned substantial real estate. Even if such a representation was false, it is unclear to what extent the Plaintiff relied on that falsehood in continuing to ship more merchandise. Equally, it cannot be determined that the reliance was justified given the

lack of any evidence as to what due diligence might have been undertaken by the

Debtor. Finally, as to damages, the Court does not know how much Plaintiff was owed

at the time the representation was made and so it is unclear how much of the $900,000

can be attributed to that misrepresentation. So even if the Debtor represented to the

Plaintiff that his personal guaranty was backed by sufficient assets, the record is unclear

as to why the Plaintiff shipped more product to Debtor's company (and how much it was

worth).

*Debtor's Collusion*
*With North Mill*

Moving from artifice to overt harm, the Debtor addresses the allegations that he

colluded with Wilton's secured lender (North Mill). He is alleged to have conspired with

North Mill to frustrate Plaintiff's collection efforts while advancing the interests of North

Mill as well as his own at the expense of Wilton's creditors. The reality, explains the

Defendant, was that after Plaintiff had obtained its judgment, the Defendant's company

was simply out of funds to pay for legal defense. Def.'s Mot. ¶ 74.

Even if the Debtor was short on money to pay legal fees, that does not explain

the questionable decision-making on his part. The Court is at a loss to understand why

Debtor agreed to North Mill's demand that Gordon Bros. liquidate the Wilton inventory.

A business advisor retained by Wilton had valued the assets at $1.1 million. Pl.'s Ex.

72A. Gordon Bros. offer was $725,000 for the inventory, but Vagabond House was

prepared to pay $1.23 million for the same assets. *Id.* Ex. 72D Notwithstanding the

higher offer, the Debtor agreed to go with Gordon Bros. *Id.* Ex. 75. Gordon Bros sold the

inventory for $1.4 million clearing a profit for itself of $458,000. *Id.* So given that the

25

Vagabond House offer ($1.23 million) was in line with what the property sold for, the decision to go with Gordon Bros. appears to have been contrary to Wilton's best interests.

A it turns out, says Plaintiff, the Debtor had a personal reason for accepting the Gordon Bros offer. He agreed to retain Gordon Bros at the insistence of North Mill who was owed over $1 million on its credit line to Wilton. The Debtor was a junior participant in that credit line. *Id.* Ex. 74B According to one email, unless Debtor consented to the hiring of Gordon Bros as the liquidator, he could expect to receive no recovery on his junior position in the credit facility. *Id.* While this evidence cannot be considered conclusive on the matter, it does tend to indicate that the Debtor placed his own interests before those of his company. That would support a claim of willful and malicious injury on Debtor's part. *See In re Kates*, 485 B.R. 86, 110 (Bankr.E.D.Pa. 2012) (holding that breach of fiduciary duty constituted willful and malicious injury for purposes of § 523(a)(6)).

*Favoring of North Mill*
*Over Artesanias*

The remaining five instances of what Plaintiff considers to be willful and malicious injury as to it (B, D, E, F, and G) all derive from the same operative premise: that Debtor favored North Mill to the disadvantage of the Plaintiff. While it would be a stretch to ascribe a malicious motive to Debtor's refusal to consent to Plaintiff's judgment, his apparent concession to North Mill's demand as to how the liquidation of his company's inventory would be conducted raise questions about his intentions toward the Plaintiff. These allegations—as well as the evidence offered to support them—are serious

26

enough to allow the claim to survive summary judgment at this time. For that reason,

Defendant's request for summary judgment as to Count V must be denied.

*Summary*

      The cross-motions as to Count I will be denied. As to Debtor's motion for

summary judgment as to the remaining counts, the Court's ruling is as follows: denied

as to Count II; granted as to Count III; and denied as to Count V.

      An appropriate Order follows.

**BY THE COURT**

**Dated: May 7, 2019**

**HONORABLE JEAN K. FITZSIMON**
**United States Bankruptcy Judge**

Copies to:

Plaintiff's Counsel

Barry L. Goldin, Esquire
3744 Barrington Drive
Allentown, PA 18104-1759

Defendant's Counsel

Charles Phillips, Esquire
Eden R. Bucher, Esquire
Leisawitz Heller Abramowitch Phillips PC
2755 Century Blvd.
Wyomissing, PA 19610


Chapter 7 Trustee

Lynn E. Feldman, Esquire
221 North Cedar Crest Blvd
Allentown, PA 18104

Counsel to Trustee

Lawrence J. Kotler, Esquire
DUANE MORRIS LLP
30 South 17th Street
Philadelphia, PA 19103-4196